E-FILED
Tuesday, 07 October, 2014  12:26:02 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| ESTATE OF JOSHUA M. CRANDALL, by MARC T. CRANDALL, as Personal Representative of the Estate, and on behalf of the Survivors, Mickie Klein and Marc T. Crandall,<br><br>  Plaintiff,<br><br>v.<br><br>S.A. GODINEZ, as Director of the Illinois Department of Corrections,  WEXFORD HEALTH SOURCES INC, SHAWN M. THRUSH and JENNIFER L. PIESTER in their individual capacities,<br><br>  Defendants. | CASE NO.  14-cv-1401 |

## COMPLAINT

Plaintiff sues Defendants and alleges:

### Introduction

1.  On February 27, 2014, Joshua Crandall threaded a sheet through a bed post at Hill Correctional Center and hung himself. By the time the medical staff arrived on scene, Mr. Crandall showed no signs of life.

2.  Joshua Crandall struggled with Bipolar Disorder. Mr. Crandall was on a regimen of psychotropic medications.

3.  But Joshua Crandall found little support at the Hill Correctional Center. A cost-

saving policy of understaffing and an inappropriate reliance on medications designed to quiet and restrain rather than treat mentally ill inmates left Mr. Crandall without treatment at a critical period of his mental illness.

4. Prior to his suicide, Joshua Crandall was the subject of a criminal investigation into theft of a fellow inmates' money. Upon information and belief, a day before his suicide, Joshua Crandall was interrogated by an investigator regarding the theft. This investigator made several threats to Joshua Crandall, including that his mother, Mickie Klein, would be criminally charged; that Mr. Crandall would be sentenced to a year in segregation; that he would lose phone privileges; and likely be charged with theft.

5. The investigators moved Joshua Crandall to segregation during their investigation.

6. Joshua Crandall was desperately afraid of the consequences threatened by the investigator.

7. In desperation, Joshua Crandall took the only way he saw open to him. When Defendant SHAWN M. THRUSH failed to make a mandatory cell check, Joshua Crandall killed himself.

## Jurisdiction and Venue

8. This Court has jurisdiction over this matter under the following:

   a. 28 U.S.C. § 1331, as this is a civil action arising under the Constitution, laws, and/or treaties of the United States;

    b.  28 U.S.C. § 1337, as this is a civil action or proceeding arising under an Act of Congress regulating commerce and/or protecting trade and commerce against restraints and monopolies; and

    c.  28 U.S.C. § 1343, as this is a civil action seeking to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom and/or usage, of a right, privilege or immunity secured by the Constitution of the United States and/or by an Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

9.    Plaintiff's claims for relief are predicated, in part, upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, and upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions pursuant to 42 U.S.C. § 1983.

10.    The Plaintiff's claim for relief is also predicated upon Section 504 of the Rehabilitation Act of 1973 which authorizes actions to redress discrimination based on handicaps and Title II of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12131, and also 12133, which authorize the award of attorney's fees to prevailing plaintiffs.

11.    Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider the state law claims alleged herein.

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and § 1391(c), as

Defendants do business in this judicial district and the events or omissions giving rise to the claims occurred in this judicial district.

## Parties

13. Plaintiff MARC T. CRANDALL is the duly appointed Personal Representative of the Estate of Joshua Crandall, having been appointed Personal Representatives by the Probate Division of the Circuit Court Of The Twenty-Second Judicial Circuit, McHenry County,  in Case No.: 14 PR 107. This action is brought by MARC T. CRANDALL, father of Joshua Crandall, in his capacity as Personal Representative of the Estate of Joshua Crandall, on behalf of the Estate of Joshua Crandall, and on behalf survivors, Mickie Klein and Marc Crandall.

14. At times material to this action, Joshua Crandall, Plaintiff's decedent, was an inmate confined in Hill Correctional Center, Galesburg, Illinois, a correctional facility maintained by Defendant S.A. GODINEZ.

15. At times material to this complaint, Defendant GODINEZ was the director of the Illinois Department of Corrections ("IDOC"). Defendant GODINEZ was responsible for carrying out the policies and procedures in the IDOC and had a non-delegable duty to timely address the mental health care needs of inmates. At all times material to this action, Joshua Crandall was a prisoner subject to the care, custody and control of Defendant GODINEZ. He is sued in his official capacity.

16. Defendants GODINEZ is responsible for the establishment and implementation of the policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit.

17. At times material to this complaint, Defendant WEXFORD HEATH SOURCES, INC. ("WEXFORD"), a Pennsylvania corporation doing business in Illinois that had a contract with IDOC to provide medical and mental health care to those detained in the IDOC system, including Hill Correctional Center. Defendant Wexford was responsible for providing all medical services to detainees, including but not limited to assessment of need for services; provision of care and treatment services for all health care needs and follow up; and for hiring, training, supervision and conduct of all health care providers at Hill Correctional Center. At all relevant times, WEXFORD by and through its employees and agents, was acting under color of law and its agents and employees were acting in the course and scope of their employment.

18. Defendant WEXFOPD was responsible for the establishment and implementation of the policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit.

19. At times material to this complaint, Defendant, JENNIFER PIESTER, was a clinical social worker who was responsible for patient mental health care at Hill Correctional Center. Defendant PIESTER was responsible for carrying out the policies and procedures for mental health care then in effect at Hill Correctional

Center and for the timely response to the mental health care needs of inmates occurring, and coming to her attention. At all times material to this action, Joshua Crandall was a prisoner subject to the care and treatment of Defendant PIESTER. Defendant PIESTER is an employee of Defendant WEXFORD.

20. At times material to this complaint, Defendant SHAWN THRUSH was an IDOC employee who was responsible for the well-being and safety of prisoners at Hill Correctional Center, including doing cell checks every thirty (30) minutes on prisoners in the segregation unit. At all times material to this action, Joshua Crandall was a prisoner subjected to the care, custody and control of Defendant THRUSH while he was housed in the segregation unit. Defendant THRUSH is employed by the IDOC.

21. Defendant GODINEZ is responsible for ensuring that all of its facilities, including the Hill Correctional Center, are in compliance with federal and state law, department or agency policies, rules, and regulations, and related standards of care.

22. Defendant GODINEZ, as director of IDOC, is a public entity within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. 12131(1).

23. At all times material to this action, if Joshua Crandall required medical or mental health treatment, his only resort was to rely on the medical and mental health treatment provided by Defendants GODINEZ, WEXFORD, PIESTER, and THRUSH.

## **Common Allegations of Fact**

24.  On or about February 24, 2014, Joshua Crandall was placed in the segregation unit at the Hill Correctional Center. He was 27 years of age.

25.  Upon information and belief, Joshua Crandall was placed into segregation regarding an investigation into an alleged theft of another prisoner's funds.

26.  Prior to being placed into segregation, Joshua Crandall was labeled a Seriously Mentally Ill inmate ("SMI") by IDOC because he was diagnosed with bipolar disorder.

27.  Joshua Crandall was also on psychotropic medications

28.  SMI inmates and inmates that are on psychotropic medications are to be seen every thirty days by medical staff.

29.  Prior to February 27, 2014, the day Joshua Crandall took his own life, he had not been seen by medical staff, including Defendant PIESTER within the 30 day period.

30.   There is no indication during this time that Joshua Crandall received intensive psychological and psychiatric services within a structured inpatient setting.

31.  While being housed in the segregation unit, Joshua Crandall was interrogated by an investigator regarding the alleged theft.

32.  During the interrogations, the investigator informed Joshua Crandall that he was looking at spending a year in segregation, losing a year of good time to his

sentence, losing phone privileges, and being charged with a new criminal

offense and received an additional criminal sentence.

33.  The investigator also informed Joshua Crandall that his mother, Mickie Klein,

was also going to be in trouble for the alleged theft.

34.  Joshua Crandall became distraught regarding these threats.

35.  On February 27, 2014, Joshua Crandall wrote a letter to his mother and a friend,

expressing his desire to die.

36.  On February 27, 2014, Warden Kevwe Akpore, went to the segregation unit at

Hill Correctional Center.

37.  Upon information and belief, Warden Akpore had a conversation with Joshua

Crandall. Something during the conversation alarmed Warden Akpore.

38.  As Warden Akpore was leaving the segregation unit, he spoke with Defendant

PIESTER.

39.  The conversation between Warden Akpore and Defendant PIESTER was in

regard to Joshua Crandall and took place at approximately 2:15 p.m. that day.

40.  Warden Akpore instructed Defendant PIESTER to speak with Joshua Crandall

the same day.

41.  Defendant PIESTER did not speak with Joshua Crandall on February 27, 2014

as instructed by Warden Akpore.

42.  It had already been over 30 days since Defendant PIESTER last spoke with

Joshua Crandall,  in violation of IDOC and/or WEXFORD polices regarding

SMI prisoners.

43.    Defendant PIESTER left the segregation unit without speaking with Joshua Crandall.

44.    On February 27, 2014, Defendant THRUSH was assigned as a segregation officer.

45.    As part of the duties of the segregation officer, cell checks are to be made on all inmates at least every thirty (30) minutes.

46.    On February 27, 2014, Defendant THRUSH did not make cell checks every thirty (30) minutes.

47.    Upon information and belief, Defendant THRUSH made a cell check at approximately 8:36 p.m.

48.    The next cell check was not done until approximately 9:35 p.m. by Officer Jake McDonald.

49.    When Officer McDonald approached Joshua Crandall's cell, he observed Joshua Crandall hanging by a bed sheet from a bed. Officer McDonald radioed a Code 3.

50.    Defendant THRUSH, the segregation officer, then arrived at Joshua Crandall's cell.

51.    Joshua Crandall showed no signs of life.

52.    Upon review of the cell check log, Defendant THRUSH falsely claimed he did cell checks every thirty (30) minutes, including a cell check at 9:05 p.m.

53. A review of the camera system for the segregation unit showed that Defendant THRUSH did not make a cell check at 9:05.

54. WEXFORD Defendants knew at the time they saw Joshua Crandall that he had serious medical and mental health care needs.

55. WEXFORD Defendants knew at the time they saw Joshua Crandall that if they did not provide appropriate and effective care, Joshua Crandall physical and mental health could worsen.

56. All Defendants knew that Joshua Crandall, as an inmate in Hill Correctional Center custody, had no other treatment options, and that if they (WEXFORD and the IDOC Defendants) failed to provide adequate treatment, he could access no other treatment.

57. At times material hereto, Defendant GODINEZ and IDOC employees and agents acting on his behalf, acted within the scope of their employment and under color of state law.

58. At all times material hereto, Defendant GODINEZ conducted regular audits and received reports on conditions at IDOC, including Hill Correctional Center. Therefore, Defendant GODINEZ was well aware that inmates, including Joshua Crandall, were not receiving minimally adequate mental health care while incarcerated in IDOC.

59. Defendant GODINEZ was aware there was not a sufficient mental health staff at Hill Correctional Center to address the mental health needs of inmates suffering from severe symptoms and self-destructive behavior.

60. Defendant GODINEZ had heavily participated in budget plans that left mental health needs unmet for inmates like Joshua Crandall.

61. Defendant GODINEZ was aware that correctional staff were untrained and prone to ignore mental health problems, frequently causing harm to inmates in their care.

62. At all times material, Defendant GODINEZ knew that the training given to correctional staff did not sufficiently provide the staff necessary information regarding the right of inmates such as Plaintiff's decedent to be kept safe and provided with proper medical care.

63. The staff's training was inadequate and insufficient to properly provide appropriate guidelines and job standards for proper performance of their job in a manner sufficient to meet the needs of Plaintiff's decedent.

64. As a direct and proximate result of Defendants' acts and omissions, Joshua Crandall committed suicide by hanging himself in his cell on February 27, 2014.

65. Plaintiff has had to retain counsel and is entitled to reimbursement of a reasonable attorneys fee, pursuant to 42 USC §1988.

## Causes of Action:

### I.        Claims under 42 U.S.C. 1983: Defendant GODINEZ

66. Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

67. Plaintiff is entitled to relief against Defendant GODINEZ under 42 U.S.C. § 1983, based on violation of the Fourteenth Amendment to the U.S. Constitution.

68. At all times material, Plaintiff's decedent, Joshua Crandall had a constitutionally protected right under the Fourteenth Amendment to the U.S. Constitution to receive needed care while IDOC, and to have his mental health issues timely and properly assessed and treated.

69. Defendant GODINEZ deliberately disregarded the immediate and serious threat to the mental health and well-being of persons in Hill Correctional Center in need of mental health treatment, and exhibited deliberate and callous indifference to serious psychological and mental health needs, by denying access to intensive and structured mental health care, treatment and observation necessary to treat serious mental health needs and prevent suffering and death.

70. Defendant GODINEZ was well aware that there were inmates confined in IDOC who suffered from severe mental health needs and were at risk of suicide. Despite this knowledge, Defendant GODINEZ intentionally and knowingly failed to provide serious, ongoing case management and treatment for such inmates and failed to regularly monitor their mental health care needs.

71. Defendant GODINEZ knew at all times material to this action that there was a

substantial risk that mentally ill inmates, left substantially untreated, would attempt suicide, that such suicides were reasonably foreseeable, that the threat of this action was imminent and immediate, and that inmates at risk were provided the means to accomplish that end.

72. Defendant GODINEZ deliberately disregarded the immediate and serious threat to inmates' mental health and well-being and exhibited deliberate indifference and callous indifference to their serious medical and psychological needs by denying and unreasonably delaying access to competent mental health care to treat their serious mental illness, in that:

   a. with full knowledge of prior suicide attempts, and that suicides were reasonably foreseeable, Defendant GODINEZ simply failed to provide needed care and attention;

   b. with full knowledge that inmates had expressed thoughts of suicide and had made several suicide efforts, Defendant GODINEZ failed to consistently have such inmates monitored or observed on a regular basis;

   c. with full knowledge of inmates with histories of prior suicide attempts, it was incumbent on Defendant GODINEZ to take some action to provide such inmates with close suicide observation and psychiatric care; and

   d. with full knowledge of inmates with histories of prior suicide attempts, Defendant GODINEZ actions in failing to provide close observation and adequate psychiatric care by trained mental health professionals was so

grossly substandard, incompetent, and inadequate as to fairly be

characterized as medical and mental health care so cursory as to amount to

no medical and mental health care at all.

73. In light of the aforementioned, Joshua Crandall suffered from both an

objectively and subjectively substantial risk of serious harm while under the care

and custody of Defendant GODINEZ. Defendant GODINEZ reacted to this

risk in an objectively and subjectively unreasonable manner.

74. It is more likely than not that the failures of Defendant GODINEZ as alleged

above were the cause of Joshua Crandall's suicide.

75. As a result of  Defendant GODINEZ's disregard of and indifference to

Plaintiff's decedent's constitutionally protected right to be provided with proper

care, to be safe and free from harm, Plaintiff's decedent, Joshua Crandall's

medical needs were ignored, he was instead subjected to ridicule and inattention.

76. As a direct and proximate result of Defendant GODINEZ deliberate

indifference to Joshua Crandall's serious mental health needs, Joshua Crandall

committed suicide by hanging himself in his cell on February 27, 2014.

WHEREFORE, Plaintiff prays for judgment as noted below.

## II.     Claims under 42 U.S.C. 1983: SHAWN THRUSH<br>and JENNIFER PIESTER

77. Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

78. Plaintiff is entitled to relief against Defendant SHAWN THRUSH and

JENNIFER PIESTER under 42 U.S.C. § 1983, based on violation of the Fourteenth Amendment to the U.S. Constitution.

79. At all times material, Plaintiff's decedent, Joshua Crandall had a constitutionally protected right under the Fourteenth Amendment to the U.S. Constitution to receive needed care while in the IDOC, and to have his mental health issues timely and properly assessed and treated.

80. Defendants SHAWN THRUSH and JENNIFER PIESTER deliberately disregarded the immediate and serious threat to the mental health and well-being of persons in Hill Correctional Center in need of mental health treatment, and exhibited deliberate and callous indifference to serious psychological and mental health needs, by denying access to intensive and structured mental health care, treatment and observation necessary to treat serious mental health needs and prevent suffering and death.

81. Defendants SHAWN THRUSH and JENNIFER PIESTER were well aware of the facts that there were inmates who suffered from severe mental health needs and were at risk of suicide. Despite this knowledge, Defendants SHAWN THRUSH and JENNIFER PIESTER intentionally and knowingly failed to provide serious, ongoing case management and treatment for such inmates and failed to regularly monitor their mental health care needs.

82. Defendants SHAWN THRUSH and JENNIFER PIESTER knew at all times material to this action that there was a substantial risk that mentally ill inmates,

left substantially untreated, would attempt suicide, that such suicides were reasonably foreseeable, that the threat of this action was imminent and immediate, and that inmates at risk possessed the means to accomplish that end.

83. Defendants THRUSH and PIESTER deliberately disregarded the immediate and serious threat to inmates' mental health and well-being and exhibited deliberate indifference and callous indifference to their serious medical and psychological needs by denying and unreasonably delaying access to competent mental health care to treat their serious mental illness.

84. In light of the aforementioned, Joshua Crandall suffered from both an objectively and subjectively substantial risk of serious harm while under the care and custody of Defendants THRUSH and PIESTER, Defendants THRUSH and PIESTER reacted to this risk in an objectively and subjectively unreasonable manner.

85. It is more likely than not that the failures of Defendants THRUSH and PIESTER as alleged above were the cause of Joshua Crandall's suicide.

86. As a direct and proximate result of Defendants THRUSH and PIESTER's deliberate indifference to Joshua Crandall's serious mental health needs, Joshua Crandall committed suicide by hanging himself in his cell on February 27, 2014.

WHEREFORE, Plaintiff prays for judgment as noted below.

### III.    ADA and Rehabilitation Act: Defendant GODINEZ

87. Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

88. This Count is a claim for disability discrimination against Defendant GODINEZ for violating Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., (hereinafter "ADA") which provides in pertinent part at 42 U.S.C. § 12132: No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity.

89. Title II of the Act prohibits, among other things:

   - limiting a qualified individual's enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service of an agency; and

   - subjecting a qualified individual to discrimination under any program or activity conducted by an agency.

   28 C.F.R. § 39.130.

90. Joshua Crandall was disabled as defined at 42 U.S.C. § 12102(2) and a "qualified individual" as defined at 42 U.S.C. § 12131(2), as he suffered from bipolar disorder.

91. Defendant GODINEZ is a public entity in charge of IDOC that has violated Title II of the ADA.

92. Defendant GODINEZ owed Joshua Crandall a non-delegable duty to ensure that his well-being and safety would not be compromised as a result of

discrimination based on his disability. Accordingly, Defendant GODINEZ is vicariously liable for the actions of any and all persons or entities Defendant GODINEZ designated to care for Joshua Crandall.

93.  Defendant GODINEZ's agents and employees were authorized to act for Defendant GODINEZ when they committed the ADA violations alleged herein. Defendant GODINEZ's agents and employees accepted the undertaking of acting on behalf of Defendant GODINEZ when they committed the ADA violations alleged herein. Defendant GODINEZ had control over his agents and employees when they committed the ADA violations alleged herein.

94.  The ADA violations alleged herein and committed by Defendant GODINEZ, and the persons and entities charged with caring for Joshua Crandall, were done while acting within the course and scope of their employ and/or agency with Defendant GODINEZ.

95.  Joshua Crandall's need for reasonable accommodations was obvious.

96.  Defendant GODINEZ, and the persons and entities charged with caring for Joshua Crandall, knew and/or should have known of Joshua Crandall's need for reasonable accommodations.

97.  Defendant GODINEZ, and the persons and entities charged with caring for Joshua Crandall, acted intentionally and/or with deliberate indifference to Joshua Crandall's need for reasonable accommodations as follows:

   a.  Inmates in the IDOC were entitled to a safe environment, free of known

hazards, with adequate sanitation, and removal of traps and obstructions. Persons with disabilities such as those suffered by Plaintiff's decedent were exposed to a range of hazards, like fixtures that could support a means of hanging that endangered life and safety.

b.  Inmates in the IDOC were entitled to receive care and treatment that was responsive to their particular health need, including testing, diagnosis, surgery, therapy, and monitoring. Persons who suffered disabilities such as those suffered by Plaintiff's decedent received only medication designed to keep them restrained and quiet.

c.  Inmates in the IDOC were entitled to receive security monitoring to protect them from themselves. Persons who suffered disabilities such as those suffered by Plaintiff's decedent were known to be a danger to themselves received infrequent security monitoring and inadequate protection.

98. As a direct and proximate result of the refusal and failure of Defendant GODINEZ and his agents and employees charged with caring for Joshua Crandall, to provide him with accommodations for his disability, the satisfaction of common needs necessary to a decent life, she suffered the agony of prolonged isolation, loneliness, and despair and was thus driven to suicide.

WHEREFORE, Plaintiff prays for judgment as noted below.

## IV.  ADA and Rehabilitation Act: Defendant WEXFORD

99.  Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

100.   Title II of the Americans with Disabilities Act (42 U.S.C. §§12131-12134) applies to WEXFORD.

101.   The Hill Correctional Center is a facility, and its operation comprises a program and service, for Title II purposes. WEXFORD has contracted to provide services for portion of the operation of Hill Correctional Center.

102.  Joshua Crandall had medical and mental health disabilities throughout the time he was in the Defendants' custody and care.

103.  Defendant WEXFORD failed and refused to reasonably accommodate Joshua Crandall's medical and mental health disabilities and to modify their facilities, operations, services, accommodations and programs to reasonably accommodate Joshua Crandall's disability, in violation of Title II of the ADA, when he was in IDOC custody.

104.  Defendant's failures cost Joshua Crandall his life, and the violations of the ADA are the proximate cause of  Joshua Crandall's death and the resulting damage to his estate.

105.  Plaintiff is entitled to recover, as the representative of Joshua Crandall, for those damages sustained as described in this Complaint as a result of Defendants' violations of the ADA which caused her death.

WHEREFORE, Plaintiff prays for judgment as noted below.

## V.   *Monell* Claim: WEXFORD

106. The violations of Joshua Crandall's constitutional rights under the Fourteenth Amendment to the United States Constitution, his damages and the conduct of the individual defendants, were directly and proximately caused by the actions and/or inactions of WEXFORD, which have, with deliberate indifference:

a)   failed to establish and/or implement policies, practices and procedures to ensure that inmates at Hill Correctional Center receive appropriate medical care for serious physical and mental health needs, and if necessary, health care services outside the jail;

b)    failed to establish and/or implement policies, practices and procedures to ensure that inmates at Hill Correctional Center receive appropriate medical care for serious medical and mental health needs;

c)   failed to adequately assess and provide adequate care and treatment for inmates who are a danger to themselves or others at Hill Correctional Center;

d)   failed to adequately monitor the deteriorating mental health conditions of inmates;

e)   failed to ensure through training, supervision and discipline that medical staff at Hill Correctional Center, in necessary circumstances, make a referral for health care services outside the jail;

f)      failed to ensure through training, supervision and discipline that correctional and medical staff adequately communicate and document inmates' deteriorating mental health conditions;

g)      failed to ensure through training, supervision and discipline that correctional and medical staff properly respond to inmates' deteriorating mental health conditions;

h)      failed to contract for medical and mental health services in a manner so that financial incentives would not affect referring inmates for health care services outside the jail;

i)      possessed knowledge of deficiencies in the policies, practices, customs and procedures concerning inmates, and approved and/or deliberately turned a blind eye to these deficiencies.

WHEREFORE, Plaintiff prays for judgment as noted below.

## VI.    State Claim for Wrongful Death: GODINEZ

107. Joshua Crandall was and is survived by his father Marc Crandall and mother Mickie Klein, whom constitute his heirs under Illinois law.

108. Decedent Joshua Crandall was officially pronounced dead on February 27, 2014..

109.  The wrongful death of Joshua Crandall was proximately caused by the neglect, default, and/or willful and wanton conduct of the Defendants, as described

above, in violation of 740 ILCS § 180/1.

110.   The IDOC Defendants' wrongful conduct was the direct and proximate cause of injury and damage to Joshua Crandall and is estate.

111.   As next of kin, the heirs of Joshua Crandall have lost and will continue to lose pecuniary support, consortium, society, companionship as well as the love and affection of their cherished son, and have incurred funeral and burial experiences as a proximate result of her wrongful death.

WHEREFORE, Plaintiff prays for judgment as noted below.

## VII.    State Claim for Wrongful Death: WEXFORD

112. Joshua Crandall was and is survived by his father Marc Crandall and mother Mickie Klein, whom constitute his heirs under Illinois law.

113. Decedent Joshua Crandall was officially pronounced dead on February 27, 2014.

114.   The wrongful death of Joshua Crandall was proximately caused by the neglect, default, and/or willful and wanton conduct of the Defendants, as described above, in violation of 740 ILCS § 180/1.

115.   The WEXFORD Defendants' wrongful conduct was the direct and proximate cause of injury and damage to Joshua Crandall and his estate.

116.   As next of kin, the heirs of Joshua Crandall have lost and will continue to lose pecuniary support, consortium, society, companionship as well as the love and affection of their cherished son, and have incurred funeral and burial

experiences as a proximate result of her wrongful death.

WHEREFORE, Plaintiff prays for judgment as noted below.

## Damages

A. The Estate of Joshua Crandall has sustained the following damages:

    1. funeral and burial expenses incurred as a result of decedent's death that have become a charge against his Estate or that were paid on his behalf;

    2. loss of prospective net Estate accumulations;

    3. decedent's conscious pain and suffering and the inherent value of life;

    4. pre- and post-judgment interest; and

    5. loss of earnings of Joshua Crandall from the date of his death, less lost support of his survivors excluding contributions in kind with interest.

B. Marc Crandall, as the father of Joshua Crandall, has sustained the following damages:

    1. great mental pain, anguish, and suffering from the date of injury and continuing for the remainder of his life;

    2. pre- and post-judgment interest; and

    3. medical and funeral expenses due to the death of Joshua Crandall.

C. Mickie Klein, as mother of Joshua Crandall, has sustained the following damages:

    1. great mental pain, anguish, and suffering from the date of injury and

continuing for the remainder of her life;

2. pre- and post-judgment interest.

Accordingly, Plaintiff respectfully requests that the Court award Plaintiff the aforementioned damages; any and all other compensatory damages suffered by Plaintiff; punitive damages; attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and such other and further relief as the Court deems just and equitable.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs seek judgment as follows:

A.   Compensatory damages against each of the defendants herein;

B.   Punitive damages against defendants sued individually;

C.   Damages and fees pursuant to the ADA and Rehabilitation Act;

D.   Attorney's fees pursuant to 42 U.S.C. § 1988 and costs of litigation;

F.   A trial by jury on all issues so triable;

G.   Such further relief as the Court deems just and proper.

Respectfully Submitted,

*s/Louis J. Meyer*
Louis J. Meyer
MEYER & KISS, LLC
311 West Stratford Drive
Peoria, Illinois 61614
t. 309.713.3751
f. 312.765.0104
e. louismeyer@meyerkiss.com