# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| ESTATE OF JOSHUA M. CRANDALL, | ) | |
| by MARC T. CRANDALL, as Personal | ) | |
| Representative of the Estate, and on | ) | |
| behalf of the Survivors, Mickie Klein and | ) | |
| Mar T. Crandall, | ) | Case No.   14-cv-1401 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| S.A. GODINEZ, as Director of the Illinois | ) | |
| Department of Corrections, WEXFORD | ) | |
| HEALTH SOURCES INC., SHAWN M. | ) | |
| THRUS and JENNIFER L. PIESTER in | ) | |
| their individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

# O R D E R   &   O P I N I O N

This matter is before the Court on Defendant Wexford Health Sources, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 22) and Defendant S.A. Godinez's Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. 25).

Plaintiff filed his original Complaint in this matter on October 7, 2014. (Doc. 1) After certain Defendants moved to dismiss the Complaint, the Court granted Plaintiff's motion for leave to file a First Amended Complaint. (*See* Text Order of 12/15/2015). Plaintiff then filed a six-count First Amended Complaint on January 5, 2015. (Doc. 15). Count II of the First Amended Complaint is brought pursuant to 42 U.S.C. § 1983 against Defendants Shawn Thrush and Jennifer Piester. (*Id*. at 14-

16). Both Thrush and Piester have filed Answers. (*See* Docs. 24, 23). The remaining five claims are challenged in the pending motions.

The motions are fully briefed and ready for a decision. For the reasons explained below, Wexford's motion is granted in part and denied in part, and Godinez's motion is granted.

## FACTUAL BACKGROUND[1]

Marc T. Crandall ("Plaintiff") has brought this lawsuit against Defendants in his capacity as the personal representative of the estate of Joshua M. Crandall ("Crandall"). Crandall, who was an inmate at the Hill Correctional Center in Galesburg, Illinois, committed suicide on February 27, 2014 by hanging himself with a sheet that he threaded through a bed post in his cell.

Crandall was placed in the segregation unit at the Hill Correctional Center on February 24, 2014 after he allegedly stole money from another prisoner. While he was in segregation, an investigator interrogated him regarding the theft and threatened him with a number of consequences, including facing a year in segregation, losing a year of good time off his sentence, losing phone privileges, and facing additional criminal charges. The investigator also told Crandall that his mother would face consequences for the theft. On February 27, 2014, Crandall wrote a letter to his mother and friend in which he expressed his desire to die. At some point between 8:36 p.m. and 9:35 p.m. on the same day, Crandall hanged himself by a bed sheet from a bed.

---

[1] Applying the legal standard set forth below, the facts are taken from Plaintiff's Amended Complaint and all reasonable inferences are drawn in his favor.

The Illinois Department of Corrections has contracted with Wexford Health Sources, Inc. ("Wexford") to provide medical and mental health care to inmates detained at the Hill Correctional Center. As part of the contract, Wexford is responsible for providing medical services to inmates; for hiring, training, and supervising all healthcare providers at Wexford; and for establishing and implementing policies and procedures pertaining to inmates' healthcare. As part of Wexford's policy, medical staff must see seriously mentally ill inmates at least once every thirty days.

The Illinois Department of Corrections had previously labeled Crandall, who suffered from bipolar disorder, as a seriously mentally ill inmate. In the thirty days prior to his death, no Wexford employee had seen him. Moreover, Wexford had not provided him with any intensive psychological and psychiatric services. Rather, Wexford had treated his mental illness with psychotropic medications that are designed to quiet and restrain inmates rather than treat mentally ill inmates.

Defendant Jennifer Piester is a clinical social worker and a Wexford employee who was tasked with providing health services to Crandall. On the day Crandall died, Warden Kevwe Akpore spoke with Crandall and became alarmed. At approximately 2:15 pm, Warden Akpore instructed Piester to speak with Crandall on that day. Piester, who had not seen Crandall in the previous 30 days, failed to speak with him on February 27.

Defendant S.A. Godinez was the director of the Illinois Department of Corrections when Crandall was an inmate. Defendant Shawn Thrush was an

Illinois Department of Corrections Employee who was responsible for, among other things, conducting cell checks every thirty minutes in the segregation unit. This included checking Crandall's cell. On February 27, 2014, Thrush failed to check Crandall's cell every thirty minutes. He checked Crandall's cell at 8:36 pm, but Crandall's cell was not checked again until Officer Jake McDonald checked it at 9:35 pm. By that point, Crandall had hanged himself. Although Thrush filled out an activity log and indicated that he had checked Crandall's cell at 9:05 p.m., a review of the segregation unit's security system shows that Thrush failed to make the check.

## LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), "the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient detail to give notice of the claim, and the allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard requires enough facts "to present a story that holds together," but does not require a

determination of probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Though detailed factual allegations are not needed, a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555.

**DISCUSSION**

Plaintiff's First Amended Complaint includes six causes of action, five of which are stated against either Godinez or Wexford. The first, against Godinez, is brought under 42 U.S.C. § 1983 and alleges violations of the Eighth and Fourteenth Amendments to the United States Constitution. (First. Am. Compl., Doc. 15, at ¶¶ 66-77). The third, also against Godinez, alleges violations of the Americans with Disabilities Act and the Rehabilitation Act. (*Id.* at ¶¶ 87-98). The fourth, against Wexford, is a *Monell* claim brought under 42 U.S.C. § 1983 and alleges violations of the Eighth and Fourteenth Amendments to the United States Constitution. (*Id.* at ¶ 99). The fifth and sixth are state law claims for wrongful death, brought respectively against Godinez and Wexford. (*Id.* at 100-120). The Court first considers Plaintiff's claims against Wexford before turning to his claims against Godinez.

**I.      Wexford's Motion to Dismiss**

      **a. *Monell* Claim**

Count IV of the First Amended Complaint is brought against Wexford pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). This *Monell* claim is based upon a number of Wexford's alleged policies or practices, which include: (1) a failure to establish or implement policies, practices and

5

procedures to ensure that inmates at Hill Correctional Center receive appropriate medical care; (2) a failure to adequately assess and provide adequate care and treatment for inmates who pose dangers to themselves; (3) a failure to adequately monitor the deteriorating mental health conditions of inmates; (4) a failure to ensure through training, supervision, and discipline that (a) medical staff make, when necessary, referrals for health care services outside the jail, (b) correctional and medical staff adequately communicate and document inmates' deteriorating mental health conditions, and (c) correctional and medical staff adequately respond to inmates' deteriorating mental health; and (5) a failure to contract for medical services in such a way so that financial incentives would not affect the decision to refer inmates to outside medical assistance. (Doc. 15 at ¶ 99). The Complaint further states that Wexford "possessed knowledge of deficiencies in the policies, practices, customs and procedures concerning inmates, and approved and/or deliberately turned a blind eye to these deficiencies." (*Id.*).

Other than these allegations, Plaintiff has pleaded only minimal facts against Wexford or Wexford's employees. The only Wexford employee identified in Plaintiff's Complaint is Jennifer Piester, "a clinical social worker who was responsible for patient mental health care at Hill Correctional Center." (*Id.* at ¶ 19). The Complaint alleges that Piester was responsible "for the timely response to the mental health care needs of inmates" that occurred and came to her attention. (*Id.*). This included providing mental health services to Crandall. (*Id.* at ¶¶ 19, 23). As part of Piester's job, she was supposed to see Crandall once every thirty days. (*Id.* at ¶ 28). Piester

had not seen Crandall within the thirty-days prior to his death (*id.* at ¶ 29), nor had Crandall received "intensive psychological and psychiatric services within a structured inpatient setting." (*Id.* at ¶ 30). Further, on the day that Crandall took his own life, Piester did not speak with Crandall even though the Warden had instructed her to do so. (*Id.* at ¶¶ 38-41).

These allegations are insufficient to state a claim against Wexford. For purposes of § 1983, private corporations acting under color of state law are treated as municipalities. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). A municipality may not be held vicariously liable for the failings of its employees under § 1983. Rather, a municipality is only liable under § 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Municipal policies take three possible forms: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice, that, although unauthorized, is so permanent and well-settled that it constitutes a 'custom or usage' with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004).

Here, where Plaintiff has not alleged express policies that cause constitutional deprivation or actions taken by a person with final policymaking authority, Plaintiff is alleging that Wexford's actions are permanent and well-settled, and therefore constitute a custom with the force of law. *See id.* These claims

take on a particular flavor: Plaintiff has alleged that Wexford has failed to act in certain ways, including failing to train its employees and failing to implement certain policies or procedures. (*See* Doc. 15 at ¶ 99). In such circumstances, where allegations are based on the defendant's failure to act, a plaintiff must allege that the defendant acted with deliberate indifference. *Cornfield by Lewis v. Consol. High School Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993). The deliberate indifference standard requires a "high degree of culpability on the part of the policymaker." *See id.* A municipality (or, in this case, a corporation acting under color of state law) is deliberately indifferent only when it disregards known or obvious consequences of its failures. *See Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011).

In order to show deliberate indifference, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary . . . ." *Id.* In limited circumstances, liability may be premised on a theory of "single-incident" liability. *Id.* at 1361. In such cases, "unconstitutional consequences [of a municipality's failure] could be so patently obvious that a city should be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.*

Plaintiff has failed to allege facts that allow the inference that Wexford had actual or constructive notice of its purported failures. Plaintiff alleges that Wexford "possessed knowledge of deficiencies in the policies, practices, customs and procedures concerning inmates, and approved and/or deliberately turned a blind eye to these deficiencies." (Doc 15 at ¶ 99(i)). This allegation is simply "a legal

conclusion couched as a factual allegation," as it tracks the elements of a deliberate indifference claim under *Monell*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678. Therefore, the Court does not consider the allegation.

The properly-pleaded facts provide no further support for Plaintiff's *Monell* claim against Wexford. Wexford argues that Plaintiff has pleaded himself out of court by including in his Complaint only detailed allegations that relate to a single incident: the unfortunate and untimely suicide of his son. Plaintiff, in turn, has not argued that single-incident liability is appropriate based upon any obvious unconstitutional consequences emerging from Wexford's failure. Instead, he argues that he has pleaded facts that permit the inference that Wexford's policy was widespread. For example, Plaintiff argues that Piester's failure to counsel Crandall after the Warden's instruction and her failure to see Crandall within a thirty day period allow inferences that Wexford failed to discipline, supervise, or train employees and also failed to monitor the mental health conditions of inmates. (Doc. 29 at 6).

These allegations, which relate to a single incident, are insufficient, as Plaintiff has failed to plead a pattern of Constitutional violations. *See Connick*, 131 S. Ct. at 1360. "There is no clear consensus as to how frequently [certain conduct] must occur to impose *Monell* liability, except that it must be more than one instance, or even three." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2006) (internal quotation marks omitted)(citations omitted). In order to properly plead a widespread practice, a plaintiff must plead facts that would show

either the application of a particular policy to many individuals or show many actions directed at a single individual. *Hare v. Cnty. of Kane*, No. 14 C 1851, 2014 WL 7213198, at *3 (N.D. Ill. Dec. 15, 2015). So, for example, this Court previously allowed a *Monell* claim to proceed against Wexford in a case also involving inmate suicide when the plaintiff supported its claim by citing to conclusions from an outside agency's report that detailed similar failings of Wexford that affected other prisoners. *See Rendon v. Wexford Health Sources, Inc.*, No. 10-cv-1410, 2011 WL 2669211, at *11 (C.D. Ill. July 7, 2011). And in *Ford v. Wexford Health Sources*, a district court allowed a *Monell* custom and practice claim to proceed when a plaintiff alleged that Wexford had a policy or practice based on the repeated failings of Wexford's employees to provide him with proper medical care. No. 12 C 4558, 2013 WL 474494, at *9 (N.D. Ill. Feb. 7, 2013) (citing to allegations in the operative complaint that demonstrated Wexford's repeated failures over a lengthy period of time). Such allegations are essential to support a *Monell* claim. *See Rendon*, 2011 WL 2669211, at *11, n.16 (noting that allegations of other instances beyond the single incident that affected the plaintiff are necessary to support a plausible *Monell* claim).

In this case, however, Plaintiff has only pleaded details relating to a single instance that affected Crandall. He has not pleaded examples of Wexford's failings that have impacted other prisoners at Hill Correctional Center, *see Rendon*, 2011 WL 2669211, at *11, and he has not pleaded repeated examples of Wexford's failings that impacted Crandall. *See Ford*, 2013 WL 474494, at *9. Without

additional allegations, it is just as plausible that the events leading to Crandall's untimely death were the result of an isolated occurrence as they were the result of Wexford's deliberate indifference or other of Wexford's policies or customs. For these reasons, Wexford's Motion to Dismiss Count IV is granted.

### b. Count VI: Wrongful Death Claim

In Count VI, Plaintiff alleges a wrongful death claim against Wexford. Wexford argues that Plaintiff has failed to properly comply with a substantive and procedural requirement that applies to medical malpractice actions in Illinois. Under Illinois law, a Plaintiff seeking damages for a death caused "by reason of medical . . . malpractice" must file along with the Complaint an affidavit that either (1) confirms that the affiant has reviewed the facts of the case with a health professional who determined in a written report that the case has merit, or (2) explains why the affiant could not obtain such an opinion. 735 Ill. Comp. Stat. 5/2-622(a) (West 2010). This state law requirement applies in federal court. *See Hahn v. Walsh*, 762 F.3d 617, 629 (7th Cir. 2014).

Although Plaintiff has filed an affidavit pursuant to the Illinois statute, the report submitted in support of the affidavit only addresses the activities of Wexford's employee, Jennifer Piester. Therefore, Wexford argues that the affidavit only supports liability on a theory of respondeat superior but "does not support any claim for professional negligence against Wexford as a principal Defendant." (Doc. 21 at 9). Wexford further argues that Plaintiff has not stated a respondeat superior claim against it or put it on notice that the claim is one for respondeat superior

liability. (*Id.*). Plaintiff has responded by acknowledging that it has not brought a direct claim against Wexford, and instead seeks to hold Wexford liable for the activities of its employee, Piester. (Doc. 29 at 6-7).

The Court concludes that Plaintiff has successfully stated a respondeat superior claim against Wexford for wrongful death. To state a wrongful death action under Illinois law, a plaintiff must show, among other things, that the defendant breached a duty that was owed to the deceased, and that the breach proximately caused the decedent's death. *Lough v. BNSF Ry. Co.*, 988 N.E.2d 1090, 1094 (Ill. App. Ct. 2013). In this case, Plaintiff has pleaded facts sufficient to show that under Wexford's policy, Piester owed Crandall certain duties (Doc. 15 at ¶¶ 112, 114, 115) and breached those duties. (*Id.* at ¶¶ 114-115). Furthermore, the facts as pleaded are sufficient to establish a causal connection between Piester's breach and Crandall's death.

The First Amended Complaint has put Wexford on notice that Plaintiff seeks to hold it liable for Piester's alleged breaches of duty. "Pursuant to the theory of *respondeat superior*, an employer can be liable for the torts of his employee when those torts are committed within the scope of the employment." *Adames v. Sheahan*, 909 N.E.2d 742, 754 (Ill. 2009). Although Plaintiff has not explicitly pleaded that Piester was acting within the scope of her employment, it is apparent from the face of the complaint that Plaintiff is alleging respondeat superior liability. Plaintiff alleges that, "[a]t all times material to the complaint, Defendant, JENNIFER PIESTER, was a clinical social worker who was responsible for patient mental

health care at Hill Correctional Center. Defendant PIESTER was responsible for carrying out the policies and procedures for mental health care then in effect . . . and for the timely response to the mental health care needs of inmates occurring, and coming to her attention." (Doc. 15 at ¶ 19). The Complaint goes on to allege that Crandall was subject to the care of Piester and that Piester was Wexford's employee. (*Id.*). Later, throughout Count VI, Plaintiff repeatedly refers to "WEXFORD Defendant PIESTER" (*id.* at ¶¶ 112-116), and proceeds to refer to things that Piester either did or should have done within the scope of her employment. *See id.*

Therefore, the Court concludes that Plaintiff has adequately pleaded the factual predicates necessary to establish liability on the basis of respondeat superior liability, as required by Illinois law. *See Adames*, 909 N.E.2d at 754. That is, Plaintiff has alleged that Piester is an employee of Wexford, that Piester has certain duties that are a product of her employment with Wexford, and that Piester breached those duties while acting in her role as a Wexford employee. *See id.* These facts satisfy the requirements of Rule 8. *See Fifth Third Bank (Chicago) v. Stocks*, 265 F.R.D. 316, 317 ("Indeed, Rule 8 does not require parties to plead. . . legal theories," and "the complaint itself need not specifically or correctly identify the legal basis for any claim.") (internal quotation marks omitted). For that reason, Wexford's motion to dismiss Count VI is denied.

## II. Godinez's Motion to Dismiss

### a. Count I - § 1983 Claim

In Count I of the First Amended Complaint, Plaintiff has sued Defendant Godinez in his official capacity as Director of the Illinois Department of Correction. (Doc. 15 at ¶ 15). Godinez moves to dismiss this claim on the basis that it is barred by sovereign immunity. (Doc. 26 at 3). Plaintiff has conceded that the Eleventh Amendment bars his claim against Godinez for money damages, and has indicated that he will refile the claim elsewhere. (Doc. 30 at 3). Therefore, Godinez's motion to dismiss Count I is granted.

### b. Count III – ADA and Rehabilitation Act

In Count III of the Complaint, Plaintiff has brought claims under Title II of the Americans with Disabilities Act ("ADA") and Rehabilitation Act against Defendant Godinez.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA, Plaintiff must show that Joshua Crandall (1) was a qualified individual with a disability, (2) that he was excluded from participating in, or denied the benefits of a public entity's services, programs or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability. *Hahn v. Walsh*, 915 F Supp. 2d 925, 956 (C.D. Ill. 2013), *aff'd* 762 F3d 617 (7th Cir. 2014), *reh'g and suggestion for reh'g en banc denied* (Sept. 9, 2014), *cert. denied*, No. 14-691, 2015 WL 731906 (U.S. Feb. 23, 2015). Relief available under the Rehabilitation Act is

coextensive with relief under the ADA, and "the analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds." *Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 671 (7th Cir. 2012). Therefore, a Plaintiff who cannot state a claim under Title II of the ADA also cannot state a claim under the Rehabilitation Act. *See id.* A refusal to reasonably accommodate a disability "is tantamount to denying access," and therefore constitutes discrimination under the ADA and the Rehabilitation Act. *See id.*

In the First Amended Complaint, Plaintiff claims that Crandall needed a reasonable accommodation, that such a need was obvious, and that Godinez failed to accommodate him by putting him into a cell in which he could hang himself, only providing him with medication designed to keep him restrained and quiet, and providing infrequent security monitoring and inadequate protection. (Doc. 15 at ¶ 97).

Plaintiff does not allege that Crandall was subject to discrimination, or that he failed to receive services that other inmates received. Plaintiff points to allegations in paragraphs 55 and 56 of the First Amended Complaint to support the conclusion that he was deprived of access to treatment and programs to which other non-disabled inmates had access. (Doc. 30 at 4). Plaintiff alleges that the Wexford Defendants "knew at the time they saw Joshua Crandall that if they did not provide appropriate and effective care, Joshua Crandall [sic] physical and mental health could worsen." (Doc. 15 at ¶ 55). He then alleges that Godinez knew that Crandall

"had no other treatment options, and that if they . . . failed to provide adequate treatment, he could access no other treatment." (*Id*. at ¶ 56).

These allegations fail to allege discrimination on the basis of disability. Medical services are among those "services, programs, or activities" that are covered by the ADA. *See United States v. Georgia*, 546 U.S. 151, 157 (2006). Therefore, Plaintiff could plead a plausible claim under the ADA if he pleaded that Defendants deprived Crandall of access to medical services that were available to other inmates. For example, prisons may violate the ADA when they fail to provide inmates with access to medications prescribed by physicians on the basis of inmates' disability. *See Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 286-87 (1st Cir. 2006) (concluding that a failure to provide a seriously mental ill patient with medication prescribed by his physician may give rise to liability under Title II of the ADA); *McNally v. Prison Health Servs.*, 46 F. Supp. 2d 49, 58-59 (D. Me. 1999) (concluding that prison policy that provided HIV-positive inmates with different access to prescription medicines meant to treat HIV than other inmates' access to prescription medicines may give rise to liability under Title II of the ADA). Similarly, inmates can state a claim under the ADA by pleading that a failure to accommodate a disability effectively excludes them from access to medical or health services. *See Allah v. Goord*, 405 F Supp. 2d 265, 279-81 (S.D.N.Y. 2005)(holding that a wheelchair-bound inmate sufficiently pleaded a claim under the ADA by alleging that a prison's failure to provide him with safe transportation that could accommodate wheelchairs denied him access to medical care at an outside facility).

Plaintiff has not pleaded that Crandall was denied access to medical services. In fact, the First Amended Complaint admits that Crandall received medical services, security monitoring, and supervision, but challenges the adequacy of those services. (*See* Doc. 15 at ¶ 97). Rather, Plaintiff attempts to artfully plead that the medical care that Crandall received was qualitatively different from the type of medical care that non-disabled inmates received. This claim – that Crandall was not properly treated for his mental illness – is distinctly different from a claim that Crandall was denied access to medical services, and is not cognizable under the ADA. *See Bryant v. Madigan*, 84 F3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."); *Resel v. Fox,* No. 01-1599, 26 F. App'x 572, 577 (7th Cir. 2001) (holding that "a prison official does not violate the ADA when failing to attend to the medical needs of . . . disabled prisoners.") (internal quotation marks omitted)(citation omitted). Therefore, Plaintiff's allegations regarding the inadequate medical care that Crandall received are insufficient to state a claim under the ADA.

Plaintiff also alleges that Godinez violated the ADA by putting Crandall into a segregation cell in which he could hang himself. While he was in segregation, "Crandall suffered the agony of prolonged isolation, loneliness, and despair" and was deprived of his "ability to rest and interact with others." (Doc. 30 at 5). However, Plaintiff has not pleaded facts that allow the inference that Defendant placed Crandall in segregation because of his disability or for reasons relating to his disability. Indeed, Plaintiff has pleaded that Defendant had a legitimate, non-

discriminatory, and non-pretextual reason for housing Crandall in segregation: he "was placed in the segregation unit at Hill Correctional Center . . . regarding an investigation into an alleged theft of another prisoner's funds." (Doc. 15 at ¶¶ 24-25). Although it is possible that a differently-designed cell could have prevented Crandall from taking his own life, the cell-design did not have the effect of inhibiting Crandall's access to prison services to which he would have otherwise had access. Therefore, any reasonable accommodation would be categorically different from those that would allow a person with a disability to access otherwise unavailable services. *See, e.g.*, *Kiman*, 451 F.3d at 288 (accommodating a disabled inmate by allowing him a shower chair makes bathing facilities accessible; cuffing a disabled inmate in the front rather than in the back allows access to cane so he can ambulate and access other services; providing a disabled inmate a bottom bunk makes sleeping arrangements accessible).

Because Plaintiff has not pleaded facts that permit the inference that Defendant denied Crandall access to certain services on the basis of his disability, his ADA and Rehabilitation Act claim is dismissed.

### c. Count V – Wrongful Death

Plaintiff's fifth claim for relief is a wrongful death claim against Godinez, and is based on Shawn Thrush's failure to conduct regular cell checks. Plaintiff alleges that Crandall's death was "proximately caused by the neglect, default, and/or willful and wanton conduct" of Thrush, who "failed to do his mandatory rounds and check on the health and wellbeing of Joshua Crandall." (Doc. 15 at ¶¶ 103-104). Godinez

has moved to dismiss the claim, and argues that this Court lacks jurisdiction over the matter because it is barred by sovereign immunity.

The Illinois Constitution has abolished sovereign immunity, "[e]xcept as the General Assembly may provide by law. . . ." Ill. Const. 1970 art. XIII, § 4. The Illinois legislature reinstated sovereign immunity when it passed the State Lawsuit Immunity Act, which provides for exceptions but otherwise states that "the State of Illinois shall not be made a defendant or party in any court." *See* 745 Ill. Comp. Stat. 5/1 (West 2010). One relevant exception is the Court of Claims Act, which established a forum in which litigants could bring actions against the state that are "founded upon any law of the State of Illinois . . ." *See* 745 Ill. Comp. Stat. 505/8(a) (West 2010). The Court of Claims has "exclusive jurisdiction to hear and determine . . . [a]ll claims against the State for damages in cases sounding in tort . . ." *Id.* at 505/8(d). These state immunity rules apply to state law claims in federal court. *See Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001) (citing *Magdziak v. Byrd*, 96 F.3d 1045, 1048 (7th Cir. 1996)).

"Whether an action is in fact one against the State, and hence one that must be brought in the Court of Claims, depends not on the formal identification of the parties but rather on the issues involved and the relief sought." *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990). When the "real claim is against the State of Illinois itself" and "the State of Illinois is the party vitally interested," a party cannot evade the sovereign immunity bar "by making an action nominally one against the servants or agents of the State." *Id.* There is no significant difference

between suing a state employee in his official capacity and suing the state itself. *Cebertowicz v. Love*, 2013 IL App (5th) 120273-U, at ¶ 55 (Ill. App. Ct. Sept. 24, 2013) (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).

Plaintiff has sued Godinez in his official capacity. (Doc. 15 at ¶ 15). As suing Godinez in his official capacity is functionally the same as suing the State of Illinois, *see id.*, Plaintiff's suit is barred by sovereign immunity. *See Healy*, 549 N.E.2d at 1247.

Plaintiff has attempted to save his wrongful death claim against Godinez by arguing that Thrush exceeded the scope of his authority. As explained above, Plaintiff's argument first fails because he brings the claim against Godinez in his official capacity rather than in his individual capacity. Even if Plaintiff had sued Godinez in his individual capacity, his argument for liability would be unsuccessful.

In Illinois, an action brought against a private person is considered to be against the state when there are:

> (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the state.

*Jinkins v. Lee*, 807 N.E.2d 411, 418 (Ill. 2004) (quoting *Healy*, 549 N.E.2d at 1247).

The Court concludes that this claim is, in fact, one brought against the state. *See id.* Plaintiff alleges that Thrush at all times acted within the scope of his employment and under the color of state law. (Doc. 15 at ¶ 57). Thrush failed to check Crandall's cell, a duty that is owed as part of his job with the Illinois

Department of Corrections and is not owed to the public more generally. *See Jinkins*, 807 N.E.2d at 418. In failing to check Crandall's cell, Thrush failed to conduct an activity that is "ordinarily within [his] normal and official functions . . ." *See id.*; (Doc. 15 at ¶ 45) ("As part of the duties of the segregation officer, cell checks are to be made on all inmates at least every thirty (30) minutes."). Therefore, the three criteria articulated in *Jinkins* are met. *See* 807 N.E. 2d at 418.

Plaintiff argues that Thrush acted outside of the scope of his authority "when he falsely claimed he did the cell checks every 30 minutes when in fact he did not," and "willful [sic] and intentionally falsified documents in an attempt to cover-up his own misconduct." (Doc. 30 at 7). There is some incongruity in this argument. Plaintiff simultaneously argues that Thrush exceeded the scope of his employment for the purpose of avoiding the sovereign immunity bar, but also argues that Thrush acted within the scope of his employment for the purpose of imposing vicarious liability on Godinez. The Court need not resolve this conundrum, however. It was not Thrush's attempts to cover-up his failure to check on Crandall by falsifying documents that proximately caused Crandall's death. It was Thrush's failure, either intentionally, grossly carelessly, or negligently, to comply with the Department of Corrections' policies.

Even if Thrush willfully and wantonly failed to conduct regular cell checks, he acted within the scope of his authority so long as he acted with a purpose of furthering the Department of Corrections' business. *See Robinson v. Hansbro*, No. 13-cv-2039, 2013 WL 6248542, at *4 (C.D. Ill. Dec. 2, 2013). In a case that is similar

to this one, a staff member at a mental hospital failed to conduct required fifteen-minute checks on a patient who then ingested a fatal number of pain pills. *See Jackson v. Alverez*, 831 N.E.2d 1159, 1161 (Ill. App. Ct. 2005). The court held that the employee was protected by sovereign immunity, reasoning that "the relevant question [is not] whether the employee had authority to commit the legal wrong" of failing to comply with workplace policies, but is instead "whether the employee intended to perform some function within the scope of his or her authority when committing the legal wrong." *Id.* at 1164. The court concluded that the employee's "supervision of patients, even if grossly careless, still falls within the scope of her authority as an employee of the Center." *Id.* at 1165. The same principals apply here. Checking inmates housed in segregation once every thirty minutes fell within the scope of Thrush's duties, and the manner in which he carried out that responsibility falls within the scope of his authority as an employee of the Department of Corrections. *See id.* For that reason, the Court concludes that Thrush acted within the scope of his employment when he failed to conduct the required check on Crandall's cell. *See id.* at 1164-65.

For these reasons, Defendant Godinez's motion to dismiss Plaintiff's wrongful death claim is granted.

## CONCLUSION

For the foregoing reasons, Defendant Wexford's Motion to Dismiss is GRANTED IN PART. Plaintiff's *Monell* claim (Count IV) is DISMISSED. Defendant Godinez's Motion to Dismiss is GRANTED. Plaintiff's § 1983 (Count I),

ADA and Rehabilitation Act (Count III), and wrongful death (Count V) claims against Godinez are DISMISSED.

IT IS SO ORDERED.

Entered this 30 day of March, 2015.

s/Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
